United States Court of Appeals,

Fifth Circuit.

No. 96-60083.

Michael S. ALLRED, Plaintiff-Appellant,

v.

MOORE & PETERSON, A Professional Corporation; Gaynell C. Methvin; Mark David; Paul R. Aiello; Camille F. Gravel, Jr., Individual Member of Gravel Brady & Berrigan, a Partnership, Defendants-Appellees.

July 21, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before GARWOOD, DAVIS and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

The issue presented on this appeal is whether the United States District Court for the Southern District of Mississippi had personal jurisdiction over five of the defendants in this diversity abuse of process/malicious prosecution case. The district court dismissed the case on the grounds that it lacked personal jurisdiction over all the defendants, Moore & Peterson, P.C., a Dallas, Texas law firm, and Paul R. Aiello, Mark David, and Gaynell C. Methvin, Texas residents and former members of Moore & Peterson (collectively the Texas defendants); Gravel, Brady & Berrigan, an Alexandria, Louisiana law firm; James J. Brady, Michael S. Baer, III, Helen G. Berrigan, Camille F. Gravel, Jr., and Charles G. Gravel, Louisiana residents and individual members of Gravel, Brady & Berrigan; and Texas resident Charles C. Rush. Fed.R.Civ.P. 12(b)(2). Plaintiff-appellant Michael S. Allred appealed only the

1

district court's dismissal of appellees the Texas defendants and defendant-appellee Camille F. Gravel, Jr. We affirm the district court's dismissal of the appellees on the grounds that the district court lacked personal jurisdiction.

### Facts and Proceedings Below

Plaintiff-appellant Allred is a Mississippi lawyer who filed this suit in state court in Mississippi alleging that various Texas and Louisiana attorneys, during the course of their representation of Charles C. Rush in a suit against Rush pending in the United States District Court for the Middle District of Louisiana, brought a frivolous third-party complaint against Allred, who, at the time, was representing the Louisiana Insurance Commissioner in his capacity as a party in the referenced suit against Rush.

As alleged by Allred, the underlying facts of the current dispute go back almost twenty years to his representation of American Public Life Insurance Company (APLIC) in 1977 in a suit against Richard O. Rush, Charles C. Rush, and Southern Educators Life Insurance Company (SELIC). According to Allred, this 1977 Mississippi lawsuit involved alleged violations of securities laws and breach of fiduciary duties in the course of dealings between APLIC and SELIC. The parties eventually settled in December 1978 and executed a "Mutual Release and Covenant Not To Sue" in February 1979.

In October 1984, the Insurance Commissioner of Louisiana retained Allred to file suit against Charles C. Rush, among others, on behalf of SELIC, which had been placed in rehabilitation, the

2

Commissioner being the Rehabilitator, and renamed First American Life Insurance Company (FALIC). Allred filed suit in the United States District Court for the Middle District of Louisiana on May 14, 1985, naming numerous defendants.[1] The Louisiana suit charged Rush with fraud, conversion, and breach of fiduciary duty. In April 1986, the defendants-appellees, as attorneys for Rush, filed in the Louisiana suit a third-party complaint naming Rush as third-party plaintiff and APLIC and Allred as third party defendants, alleging breach of the 1979 covenant not to sue, and asserting contribution and indemnification claims for any judgment rendered against Rush. Process on Allred and interrogatories to him were served by being sent certified mail from Dallas, Texas, to Allred's Jackson, Mississippi law offices. Allred subsequently either withdrew or was terminated from his role as attorney for the Louisiana Insurance Commissioner as Rehabilitator of FALIC in the Louisiana suit, allegedly due to the conflict of interest caused by Rush's third-party complaint. The third-party complaint was subsequently dismissed with prejudice when, pursuant to a settlement agreement, Rush assigned the third-party claim to the Rehabilitator of FALIC.

On August 20, 1993, Allred filed the instant suit in the Circuit Court for the First Judicial District of Hinds County, Mississippi, alleging malicious prosecution and abuse of process

---

[1]*Sherman A. Bernard, et al. v. Richard O. Rush et al.*, 641 F.Supp. 730 (M.D.La.1985). An amended complaint was filed on April 10, 1986. Eventually the case involved forty-five named defendants.

against Moore & Peterson;  the former individual members of Moore & Peterson who represented Rush;  Gravel, Brady & Berrigan, Rush's local counsel;  and the individual members of Gravel, Brady & Berrigan.[2]  Allred's complaint alleged the facts set forth above and asserted that he suffered economic and emotional injury as a result of the third-party claim;  specifically, a loss of business income, opportunity, and reputation.  The defendants were served by certified mail delivered to them in Texas and Louisiana, respectively.  The defendants timely removed the case to the district court below on the basis of diversity of citizenship.  28 U.S.C. § 1332.

On October 8, 1993, the Texas defendants filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) on the ground that service of process by mail on Allred in Mississippi did not establish sufficient contact with Mississippi to allow the district court to exercise personal jurisdiction over the defendants, who were citizens of Texas.  On January 14, 1994, defendants Gravel, Brady & Berrigan and its individual members (including defendant-appellee Camille F. Gravel, Jr.), citizens of Louisiana, filed a similar motion to dismiss.  The district court heard oral arguments on February 24, 1994 and on March 3, 1994, announced its intention to rule in favor of the defendants on the motions to dismiss.  Allred, on September 26, 1994, filed a motion for leave to amend his complaint to add a conspiracy claim pursuant

---

[2]Final judgment in the Louisiana suit had been entered on March 1, 1993.

4

to Rule 15(a).  On September 30, 1994, without ruling on Allred's motion to amend, the district court issued a final order of dismissal for lack of personal jurisdiction.[3]  Allred filed a timely "Motion To Reconsider" pursuant to Rules 59 and 60 on the grounds that the district court failed to consider his pending motion to amend.  The district court, construing Allred's motion as a motion to alter or amend the judgment under Rule 59(e), found that the amended complaint did not allege that any conspiratorial events took place in Mississippi and that the amended complaint relied on precisely the same basis as the earlier complaint—namely, that the service of process by certified mail in Mississippi was sufficient to establish personal jurisdiction.  Accordingly, the district court denied Allred's Rule 59(e) motion on January 9, 1996.  Allred filed a timely notice of appeal.[4]

### Discussion

Allred's sole contention on appeal is that the district court erred in holding it lacked *in personam* jurisdiction over the Texas defendants and Camille F. Gravel, Jr.

A district court's dismissal for want of personal jurisdiction pursuant to Rule 12(b)(2) is subject to *de novo* review.  *Jobe v. ATR Mktg., Inc.,* 87 F.3d 751, 753 (5th Cir.1996); *Wilson v. Belin,* 20 F.3d 644, 647-48 (5th Cir.), *cert. denied,* 513

---

[3]The district court had dismissed Charles C. Rush, initially also a defendant in this action, for lack of subject matter jurisdiction because Rush had filed a suggestion of bankruptcy.

[4]Allred does not appeal the district court's dismissal of Gravel, Brady & Berrigan, Charles C. Rush, James J. Brady, Michael S. Baer, III, Helen G. Berrigan, or Charles G. Gravel.

U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985) (citing *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985); *Washington v. Norton Mfrg. Inc.,* 588 F.2d 441, 443 (5th Cir.), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979)); *see also Jobe,* 87 F.3d at 753.

A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law. *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989); *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987). "The state court or federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Cycles,* 889 F.2d at 616 (citing *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1265 (5th Cir.1983)); *see also Jobe,* 87 F.3d at 753; *Rittenhouse,* 832 F.2d at 1382; *Stuart,* 772 F.2d at 1189.

It is undisputed that none of the appellees are or were ever residents or citizens of Mississippi; the Texas defendants were at

6

all relevant times residents and citizens of Texas, and appellee Gravel was at all relevant times a citizen and resident of Louisiana. None of the appellees had an agent for service of process in Mississippi, or engaged in business (or had any permit to do so), or practiced law (or was licensed to do so), in Mississippi; none represented parties in litigation in Mississippi; none owned or leased property, or had any employees, offices, bank accounts or telephone listings there, or advertised or solicited business there. None traveled to Mississippi on a regular basis. The only relevant conduct or connection on the part of appellees related to Mississippi is the mailing from Dallas, Texas, to Allred's Jackson, Mississippi law office of the third party complaint and summons, and interrogatories, in the lawsuit pending in the Middle District of Louisiana in which Allred was counsel for the plaintiff, the Louisiana Commissioner of Insurance.

I. The Mississippi Long-Arm Statute

On appeal, Allred relies exclusively on the tort prong of the Mississippi long-arm statute to support the exercise of jurisdiction by the district court over the appellees.[5] The

---

[5]Mississippi's long-arm statute provides in relevant part:

> "Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, *or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state,* or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be

7

Mississippi long-arm statute is not coextensive with federal due process, requiring an analysis of the scope of the reach of the statute itself. *See Cycles,* 889 F.2d at 616-17 (noting that the Mississippi long-arm statute has a "relatively restrictive scope"); *Rittenhouse,* 832 F.2d at 1383 (same).

Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi. *See, e.g., Smith v. Temco,* 252 So.2d 212, 216 (Miss.1971); *Western Chain Co. v. Brownlee,* 317 So.2d 418, 421 (Miss.1975); *Rittenhouse,* 832 F.2d at 1384; *Jobe,* 87 F.3d at 753; *Cycles,* 889 F.2d at 619. As the Mississippi Supreme Court has observed consistently:

> "The tort is not complete until the injury occurs, and if the injury occurs in this State then, under the ... statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court." *Temco,* 252 So.2d at 216; *see also Anderson v. Sonat Exploration Co.,* 523 So.2d 1024, 1025 (Miss.1988).

Our cases, however, have been careful to distinguish actual injury from its resultant consequences. "[C]onsequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Jobe,* 87 F.3d at 753 & n. 2 (observing that "[t]he term "injury' commonly denotes the invasion of any legally protected interest of another" whereas "the term "damage' is understood to mean the harm, detriment or loss sustained by reason of an injury"); *see also Cycles,* 889 F.2d

subjected to the jurisdiction of the courts of this state." Miss.Code Ann. § 13-3-57 (1996 Supp.) (emphasis added).

8

at 619 ("We have held that with respect to Mississippi's long-arm statute a tort occurs where and when the actual injury takes place, not at the place of the economic consequences of the injury."); *Rittenhouse,* 832 F.2d at 1384 (same); *Estate of Portnoy v. Cessna Aircraft Co.,* 730 F.2d 286, 290 (5th Cir.1984) (same).

At the outset, we reject Allred's reliance on *Hyde Construction Co. v. Koehring,* 321 F.Supp. 1193 (S.D.Miss.1969), for the proposition that "service of process on Allred in Mississippi constituted the commission of a tort in Mississippi for purposes of satisfying the requirements of the Mississippi long-arm statute." Although the district court in *Hyde,* examining section 13-3-57's statutory predecessor, acknowledged that the abuse of process tort must "accrue" within the geographical limits of Mississippi and so found, it nevertheless repeatedly emphasized what we think to have been the determinative factor in its analysis: the defendant in the abuse of process action had "domesticated itself or qualified to do business within the State of Mississippi having appointed ... [a] registered agent for service of process between [all relevant dates]." *Hyde,* 321 F.Supp. at 1210 (noting that the defendant corporation "was authorized to transact business in Mississippi"). Allred neither argued nor presented evidence that any defendant had any contact whatsoever with Mississippi other than the service of process by certified mail from Dallas, Texas to his Jackson, Mississippi law office. To the extent that *Hyde* supports Allred's questionable proposition, it must be limited to the case of a person or entity subject to the general jurisdiction of the

9

Mississippi courts.

## A. Malicious Prosecution

In Mississippi, malicious prosecution requires:

"(1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the instance of the defendants; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause in the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of." *Mississippi Road Supply Co. v. Zurich-American Ins. Co.,* 501 So.2d 412, 414 (Miss.1987) (citing *Harvill v. Tabor,* 240 Miss. 750, 128 So.2d 863, 864 (1961)).

Allred does not contend that elements two through five of the tort of malicious prosecution occurred in Mississippi. Rather, Allred argues primarily that his economic, reputational, and emotional "injuries" set forth in his affidavit were suffered in Mississippi and, therefore, support jurisdiction under the tort prong. Appellees concede that the damages Allred alleges may have occurred in Mississippi, but argue that damages, alone, are insufficient to support personal jurisdiction under the Mississippi long-arm statute. Appellees are correct.

As discussed above, this Circuit has recognized consistently that Mississippi does not permit *damages* to serve as a proxy for *injury* in the personal jurisdiction calculus. The concepts are distinct and we must endeavor not to conflate the existence of an injury—and hence the completed tort—with the presence of its economic consequences. *See Jobe,* 87 F.3d at 753 (noting that, especially in a commercial tort situation, collateral consequences can be quite far-reaching). The injury suffered in a malicious prosecution tort is the institution of criminal or civil

10

proceedings where the institution ought not to have occurred (and occurred for an improper reason). Allred's damages-*qua*-injury argument for personal jurisdiction under the Mississippi long-arm statute flies in the face of our rather clear guidance in *Jobe, Cycles, Rittenhouse,* and *Portnoy.*

Allred has alleged no facts that support the exercise of personal jurisdiction through the use of the Mississippi long-arm statute over his malicious prosecution claim. Allred's insistence that the service of process by certified mail from out of state can support jurisdiction under the first element of the malicious prosecution tort is misplaced. Service of process on Allred in Mississippi was not a prerequisite to the institution of judicial proceedings against him in the Louisiana suit. A lawsuit is commenced under the federal rules when the complaint is filed. Fed.R.Civ.P. 2 ("There shall be one form of action to be known as "civil action'."); Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). In Louisiana, the filing of a lawsuit both commences the action and tolls the statute of limitation. *See* La.Code Civ. Proc. Ann. art. 421 (West 1960)("A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction."); La. Civ.Code Ann. art. 3463 (West 1994) ("An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending."); *accord Segura v. Frank,* 630 So.2d

11

714, 727(La.), *cert. denied,* 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). Even in Mississippi, Allred's preferred forum, it is the *filing* of a lawsuit—and not the *service of process*—that is the determinative event in the commencement of a lawsuit. *See* M.R.C.P. 3(a) ("A civil action is commenced by filing a complaint with the court."); *Watters v. Stripling,* 675 So.2d 1242, 1244 (Miss.1996); *Erby v. Cox,* 654 So.2d 503, 505 (Miss.1995) ("[D]oes the simple filing of the complaint without process being issued toll the statute of limitations? We answer in the affirmative."). Stated simply, the injury that Allred complained of in his malicious prosecution claim was the filing of the Louisiana lawsuit, not the subsequent service of process. We have neither found, nor been cited to, any relevant Mississippi authority that supports the proposition that service of process is a necessary element of the malicious prosecution tort in Mississippi.

## B. Abuse of Process

In Mississippi, the elements of abuse of process are:

"(1) the party made an illegal use of the process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *McLain v. West Side Bone & Joint Ctr.,* 656 So.2d 119, 123 (Miss.1995) (citing *Foster v. Turner,* 319 So.2d 233, 236 (Miss.1975)).

For the reasons discussed above, we reject Allred's contention that he can bootstrap his alleged damages incurred in Mississippi into an injury to achieve personal jurisdiction over his abuse of process claim for the purposes of the Mississippi long-arm statute. Furthermore, as is readily apparent from the above quoted excerpt, the abuse of process tort, in Mississippi as elsewhere, involves

12

the *corruption* of process—not merely the issuance of process *simpliciter.*

The Mississippi Supreme Court has acknowledged that the abuse of process tort does not address the case, as here, where the only alleged abuse of process was the service of a summons without any corruption or impropriety:

> "What defendant complains of in his counterclaim is not based on any perversion of any process, but simply the filing of the suit....  Nothing unlawful was done under any process.  It cannot be argued that the process of the court was abused by accomplishing a result not commanded by it or not lawfully obtainable under it when the only process involved was the simple summon to defend the suit." *Edmonds v. Delta Democrat Publishing Co.,* 230 Miss. 583, 93 So.2d 171, 175 (1957); *see also Foster,* 319 So.2d at 235 ("[Abuse of process requires a]n ulterior purpose, and the perversion of the process after its issuance so as to accomplish a result not commanded by it or not lawfully obtainable under it.") (citing *Edmonds,* 93 So.2d at 174).

In *Brown v. Edwards,* 721 F.2d 1442, 1454 (5th Cir.1984), this Court also addressed the point that Allred misunderstands concerning the abuse of process tort.  After considering the *Restatement* 's description of the elements of the abuse of process tort, we favorably quoted the comment:

> " "The gravamen of the misconduct for which the liability stated in this Section is imposed is *not* the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings;  it is the *misuse* of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.  Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them.  The *subsequent misuse* of the process ... constitutes the misconduct for which the liability is imposed....' "  *Brown,* 721 F.2d at 1454-55 (quoting *Restatement (Second) of Torts* § 682 cmt. a (emphasis in *Brown* )).

13

*Prosser and Keeton on Torts* speaks even more directly to the question of whether the mere service of process—without any allegation that the service of process itself was somehow perverted—constitutes an element of abuse of process:

> "The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; *and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion,* even though with bad intentions.... There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." *Prosser and Keeton on Torts* 898 (5th ed.1984) (emphasis added); *see also Brown,* 721 F.2d at 1455 (same).

Accordingly, because the only activity alleged by Allred to have taken place within Mississippi was the service of process by certified mail from Texas to his Mississippi law office—an event which is simply not an element (or part of an element) of the tort of abuse of process—we hold that Allred failed to allege any facts that would support personal jurisdiction over the defendants under the tort prong of the Mississippi long-arm statute.

Allred's reliance on *Simon v. United States,* 644 F.2d 490 (1981), is similarly misplaced. *Simon,* unlike the facts here presented, involved allegations of corrupt and perverted abuse of process by the defendant within the forum state. In *Simon* the abuse of process defendant deliberately had issued a subpoena containing Simon's incorrect name and address in Louisiana. *Id.* at 492. As a result of the defendant's misrepresentation, Simon was unable to be served in Louisiana. *Id.* The defendant, however,

14

informed the federal district court judge in Georgia that Simon had in fact been served and the judge subsequently caused a "subpoena ticket" to be issued in Louisiana. *Id.* United States marshals subsequently served Simon personally in Louisiana, who left for Georgia the next day. *Id.* Upon his arrival in Georgia, Simon was immediately arrested. *Id.*

Although the *Simon* defendant's activities within the forum state were quite limited, we find it significant that, unlike here, the service of process by the federal marshals in Louisiana resulted directly from the defendant's "intentional misuse of process"—*i.e.,* lying to the federal judge to cause the subpoena to issue and then lying again about whether Simon had in fact been served—and not merely the proper service of a defendant for purportedly improper motives. Here, the service of process was entirely proper and in accordance with the applicable rules.

In summary, we hold that Allred failed to allege that any element of the abuse of process tort occurred in Mississippi: (1) to the extent that the tort requires corruption or perversion of process, neither has been alleged, and (2) to the extent that the tort requires an improper motive, it is uncontroverted that all decisions regarding the third-party complaint were made in either Louisiana or Texas. Accordingly, we find that the district court appropriately determined that Allred failed to establish the proper jurisdictional prerequisites to support the exercise of personal

15

jurisdiction under the Mississippi long-arm statute.[6]

II. Due Process

Even were we to accept Allred's arguments concerning the operation of the Mississippi long-arm statute, we are nevertheless convinced that the exercise of personal jurisdiction by the district court in Mississippi would violate due process.

The constitutional limitations on the reach of the personal jurisdiction of a court are now quite familiar. The exercise of personal jurisdiction over a nonresident defendant comports with due process principles only when two requirements are met. First, the nonresident defendant must have "purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts' with that forum state." *Felch v. Transportes Lar-Mex, Sa De CV,* 92 F.3d 320, 323 (5th Cir.1996) (citing *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert. denied,* 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *International Shoe Co. v. Washington,* 326 U.S. 310, 315-17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Second, the exercise of personal jurisdiction over the nonresident defendant "must not "offend "traditional notions of fair play and substantial justice."

---

[6]We are also in complete agreement with the district court that Allred's attempt to add an "allegation of conspiracy to the complaint attaches no additional merit to the assertion that the defendants' mere service of process on the plaintiff by mail in a Louisiana lawsuit was sufficient to establish *in personam* jurisdiction in Mississippi." Like his original complaint, his amended complaint also fails to allege any conspiratorial agreements or acts took place in Mississippi.

' " *Felch,* 92 F.3d at 323 (quoting *Wilson,* 20 F.3d at 647; *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113-15, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)).

This Court recently summarized the minimum contacts inquiry as follows:

> "The "minimum contacts' prong of the inquiry may be further subdivided into contacts that give rise to "specific' personal jurisdiction and those that give rise to "general' personal jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both "continuous and systematic.' " *Wilson,* 20 F.3d at 647 (citing *Helicopteros Nacionales de Colombia, SA v. Hall,* 466 U.S. 408, 413-16, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 nn. 8-9 (1984)).

Only if the nonresident defendant has sufficient minimum contacts with the forum state will the fairness of the exercise of personal jurisdiction be evaluated.[7]

The attorney appellees' contacts with Mississippi do not remotely approach the level required to support general jurisdiction, and Allred does not contend otherwise. Rather, Allred maintains that specific jurisdiction is appropriate because the causes of action—malicious prosecution and abuse of process—are

_____

[7]"The fairness prong for personal jurisdiction requires federal courts to consider (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; (5) "the shared interest of the several States in furthering fundamental substantive social policies.' " *Bullion v. Gillespie,* 895 F.2d 213, 216 n. 5 (5th Cir.1990) (citing *Asahi,* 480 U.S. at 113-15, 107 S.Ct. at 1033 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 288-90, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980))).

17

directly related to appellees' contacts with Mississippi.  In support of his position, Allred cites a number of defamation cases permitting the exercise of specific jurisdiction upon the existence of a single, purposeful contact with the forum state.  *See, e.g., Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984);  *Brown v. Flowers Indus., Inc.,* 688 F.2d 328 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983).

We are not persuaded that the defamation cases present an appropriate line of precedent for Allred.  In the defamation cases cited by Allred, the allegedly tortious acts—the publication of defamatory statements—were expressly aimed at the forum state and the nonresident defendants knew that their acts would have an impact on the plaintiff in the forum state.  *See, e.g., Calder,* 465 U.S. at 787-90, 104 S.Ct. at 1486-87 (allegedly libelous article about plaintiff's drinking habits published in 604,000 copies of the *National Enquirer* sold in the forum state);  *Brown,* 688 F.2d at 333 (single, defamatory telephone call directed at the forum state).  The service of process here, however, is qualitatively different than the publication of a defamatory statement or article.  In our view, it is simply not a part of either Mississippi's malicious prosecution or abuse of process tort;  and, even if it were, it would constitute only the smallest portion of one element of the claim.  This is not the case with the publication element of a defamation tort.  That the "effects" test of *Calder* applies outside of the defamation context is clear;  but

the effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state. Any publication in this case occurred in Louisiana, upon the filing in the federal court there of the third party complaint, a public document. There was no publication in Mississippi, the process and complaint simply arrived at Allred's office there by mail in an envelope addressed to him. Any "effects" in this case are essentially the effects of being sued in the Louisiana case, and it is immaterial to these effects when, where or how service was affected (unlike the relation between the "effects" of a libel and the place of its publication).

We agree with the Seventh Circuit's pronouncement that:

"The Supreme Court did not intend the *Calder* "effects' test to apply only to libel cases. However, the "effects' of the intentional tort of libel in the forum state (*i.e.,* the plaintiff's residence) are perhaps more pronounced than the "effects' of most other intentional torts. Nevertheless, the key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum. Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case." *Wallace v. Herron,* 778 F.2d 391, 395 (7th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

The defendants' contacts with Mississippi fall far short of the minimum contacts mark.

Allred's arguments notwithstanding, we agree with the district court and the appellees that *Wallace* presents a factually indistinguishable case. In *Wallace,* an Indiana resident sued in Indiana a California law firm and three of its attorneys for malicious prosecution in connection with a lawsuit defendants had

filed in California. *Wallace,* 778 F.2d at 392. Only one of the California defendants had even been to Indiana (to take a deposition in an unrelated case). *Id.* at 394. Wallace, the plaintiff, argued that the defendants' service in Indiana of interrogatories and discovery requests provided sufficient minimum contacts to comport with due process. *Id.* The Seventh Circuit affirmed the district court's dismissal for lack of sufficient minimum contacts with the Indiana forum.

As in *Wallace,* the defendants in the present suit caused process to be served by mail on Allred on behalf of their clients in Louisiana federal district court pursuant to a federal lawsuit in Louisiana. No other contacts with Mississippi have been alleged. It would indeed be unreasonable to require defendants to appear in Mississippi to defend this suit on the basis of such attenuated contacts. *See id.* at 395 ("The defendants filed these papers on behalf of their California clients in a California court pursuant to a California lawsuit.... [Defendants] took no action that created the necessary connection with Indiana for them to reasonably anticipate being haled into court there.").

Accordingly, we hold that where process is issued in a Louisiana lawsuit and is properly served in Mississippi on a Mississippi resident by mailing from outside of Mississippi, such service—absent any other Mississippi nexus—provides insufficient contact with Mississippi to support the exercise of personal jurisdiction by a Mississippi court over non-residents served outside of Mississippi under the constraints of the due process

clause.

## Conclusion

Because the district court properly held it lacked authority under the Mississippi long-arm statute to exercise personal jurisdiction over the defendants-appellees and because the exercise of personal jurisdiction by the Mississippi federal district court would, in any event, be improper under the due process clause, the district court's judgment is

AFFIRMED.