**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 99-60913**

**JOSEPH N. BAILEY, III,**

**Plaintiff-Appellee,**

**VERSUS**

**DAVID L. ZEHR; NORTHWIND AVIATION CORPORATION,**

**Defendants-Appellants.**

Appeal from the United States District Court
For the Northern District of Mississippi
(1:97-CV-383-S-D)

June 14, 2001

Before POLITZ, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

In this diversity case, Defendants-Appellants David L. Zehr and Northwind Aviation Corporation ("Northwind")[1] (collectively "the appellants") appeal the district court's judgment, after a jury trial, awarding $160,000 to Plaintiff-Appellee Joseph N. Bailey, III, for fraud. For the following reasons, we vacate the

---

[*]Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

[1]Zehr is Northwind's president and sole shareholder.

judgment and dismiss the case for lack of personal jurisdiction.

## I. BACKGROUND

This suit concerns the sale of a 421 Cessna ("421") involving Bailey, the appellants, and a man named Dale Cox. In the late 80s, Bailey bought a Beechcraft Bonanza ("Bonanza"), which Cox had advertised in a trade paper. Through that purchase, Bailey met Zehr, whose hangar in Indiana actually housed the Bonanza. Upon meeting Zehr in Indiana, Bailey was told that Cox and Zehr were in a partnership under which Cox acted as an airplane broker and buyer while Zehr refurbished the planes. Bailey agreed to purchase the Bonanza for $78,000 and under terms that allowed him to use the plane later as a trade-in towards the purchase of another plane, less $10.00 per hour for every hour that Bailey had flown the Bonanza.

Some months later, Bailey decided to trade for a newer Bonanza, and Cox and Zehr flew to Tupelo, Mississippi, to pick up Bailey and to fly to Indiana to inspect the newer model. Bailey purchased that newer model for $180,000 under the same terms as the previous model.

In January 1990, Bailey decided again to upgrade, this time to a Barron airplane. As with the two prior purchases, Cox represented that the plane was in good condition. Again, Bailey flew to Zehr's hangar in Indiana to examine and purchase the Barron. The actual paperwork, however, was done in Minnesota,

2

where Cox lived.  The purchase was for $285,000 less the trade-in for the newer model Bonanza.

Bailey kept the Barron for fifteen months before deciding to trade up to the 421, with a purchase price of $485,000 less the trade-in.  The call letters of the plane were N421 CZ, with the CZ standing for Cox and Zehr.

Thereafter, as a result of pressing financial obligations, Bailey was compelled to sell the 421 and contacted Cox to do this.  After several weeks of the airplane not selling, Cox explained to Bailey that the plane could sell better if it were with Cox in Minnesota.  Consequently, on December 8, 1991, Zehr flew to Mississippi to get the airplane and to deliver it to Cox in Minnesota.  Cox later advised Bailey that no purchaser could be found and suggested that Bailey "trade down" by accepting a 1978 Turbo Barron ("Turbo Barron"), which Cox said wholesaled at $160,000, plus a payment of $326,000 in exchange for the 421.  Cox represented that: 1) he owned the Turbo Barron; 2) the airplane had just come in on a trade; 3) the airplane was worth $160,000; and 4) the airplane had only 1,400 flight hours on it.  Zehr confirmed those representations after Bailey accepted the trade down.

Based on Cox's representations, Bailey agreed to trade the 421 for the Turbo Barron plus a payment of $326,000 on February 24, 1992.  Moreover, as part of this transaction, Cox was to sell the traded down Turbo Barron, with Bailey to receive the first $160,000.  Any proceeds beyond that were to be split evenly.

3

When the Turbo Barron did not sell for several weeks, Bailey called Zehr about his concerns. Zehr advised Bailey that Cox was working hard to sell the plane and to "hang in there." But as the plane remained unsold, Bailey made repeated unsuccessful requests for possession of the Turbo Barron, which apparently was with Cox. Cox agreed to provide the plane but only if Bailey paid the costs of certain overhaul that had apparently been done as agreed to by the parties.[2]

Thereafter, Bailey filed a replevin suit on January 2, 1996, against Cox to recover the plane or its stated cash value of $160,000. During that suit, Bailey discovered for the first time that: 1) the airplane had actually been owned by Northwind, not Cox, for approximately 1.5 years at the time the plane was offered to Bailey; 2) the Turbo Barron had been previously offered for sale but had never sold until Bailey purchased it; 3) the Turbo Barron's value was around $110,000, not $160,000; 4) the airplane had 2,400, not 1,400, hours; and 5) Cox did have a buyer, Jim Anthony, for the 421, who finalized the purchase for $460,000 on February 21, 1992.

Bailey sought leave to file an Amended Complaint to include Zehr as a party defendant. That was denied.[3] After Cox failed to comply with orders for inspection of the Turbo Barron, Cox's answer

---

[2]Five months after the February 24, 1992 deal, Bailey and Cox apparently agreed to a refurbishment of the Turbo Barron. That was done by Cox's company, Elite Air.

[3]The motion was denied because Bailey's motion for a default judgment had already progressed to an advanced state.

was stricken. Ultimately, a default judgment was rendered against Cox for willful conversion and breach of fiduciary duty. Part of that award consisted of $160,000 as the alleged value of the Turbo Barron.

Because Bailey could not satisfy the judgment against Cox, he filed suit against Zehr and Northwind.[4] Dr. Joe Garofalo, who had previously owned the Turbo Barron, testified by deposition that he had sold the plane to Cox and Zehr and that, at the time of the sale, he owed $110,000 on the Turbo Barron, which loan amount Northwind assumed. In addition, Anthony testified by deposition that he first inspected the 421 on February 11 or 12, 1992, having been advised that a doctor down south had to sell the plane due to financial difficulties. The jury's verdict found that a partnership existed between Cox and Zehr/Northwind with respect to the sale and exchange of the 421 for the Turbo Barron and that Cox committed fraud against Bailey while acting within the scope and course of that partnership. The jury's award of damages was $160,000.

This appeal followed.

## II. DISCUSSION

Among the many alleged points of error raised on appeal, the

---

[4]Bailey initially filed suit in state court and named only Zehr. After the case was removed to federal court, the district court granted leave to amend the complaint to include Northwind.

appellants primarily question whether the district court had personal jurisdiction over them. We review de novo whether the district court had personal jurisdiction over the appellants. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). "A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law." *Id.* The plaintiff bears the burden of establishing personal jurisdiction. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999). Where, as in this case, the district court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff may satisfy his burden by presenting a prima facie case for jurisdiction. *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996). "'[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.'" *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

Jurisdiction may be asserted if: 1) the state's long-arm statute applies, as interpreted by the state's courts; and 2) due process is satisfied under the Fourteenth Amendment of the United States Constitution. *Allred*, 117 F.3d at 281. Because

6

Mississippi's long-arm statute is not co-extensive with federal due process, this court must first analyze the scope of the reach of the statute itself. *Id.* at 282. If Mississippi law does not provide for the assertion of personal jurisdiction over the appellants, then we need not consider the due process requirement. *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). Conversely, if Mississippi law provides for the exercise of personal jurisdiction over the appellants, then we consider whether that exercise comports with due process principles. "First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state. . . . Second, the exercise of personal jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice." *Allred*, 117 F.3d at 285 (internal citations and quotations omitted).

Mississippi's long-arm statute provides in pertinent part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. . . .

7

Miss. Code Ann. § 13-3-57 (2000 Supp.).  Bailey asserted, and the district court based personal jurisdiction under the tort prong of the Mississippi statute.   Under the tort prong, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi.  *Allred*, 117 F.3d at 282.

Here, Bailey alleged fraud.[5]  The elements of fraud include: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.  *Levens v. Campbell*, 733 So. 2d 753, 761-62 (Miss. 1999).   In its order denying Zehr's motion to dismiss, the district court concluded that Bailey relinquished control of the 421 to Zehr in Mississippi and, thereby, suffered his injury in that state.[6]  Because injury itself

---

[5]Bailey also asserted a claim for negligent misrepresentation, but that claim did not go to the jury.

[6]In addition to Zehr's motion to dismiss, the district court denied on the same grounds Northwind's subsequent motion to dismiss, which was filed after Bailey was allowed to amend his complaint to include Northwind as a defendant.   Bailey's relinquishment of the airplane to Zehr also served as the basis for asserting personal jurisdiction over Northwind.   Both denials of the motions to dismiss are on appeal.

The district court actually confronted several motions pertaining to the personal jurisdiction issue and entered several orders. Besides the two motions to dismiss, it also denied Zehr's motion for reconsideration of his motion to dismiss.  And at the end of the appellants' case, the district court orally denied Northwind's

8

is sufficient to place a nonresident defendant within the ambits of Mississippi's long-arm statute, *see* **Allred**, 117 F.3d at 282, the district court found jurisdiction.

Zehr and Northwind, however, contend that the relinquishment could not have formed the basis of a tort sufficient to establish personal jurisdiction because it was not an element, i.e., injury, of any tort. Specifically, they appear to argue that there was no evidence of a fraud being perpetrated at the time Zehr came to pick up the 421 on December 8, 1991. That is, Cox's misrepresentations occurred in February 1992, nearly two months after Zehr came to pick up the airplane. Because the fraud had yet to be perpetrated, Zehr's act of picking up the airplane in December could not have been the injury element of a fraud claim.

Bailey generally responds that the retrieval of the 421 was an essential, pivotal element of his fraud claim, but for which the fraud could not have occurred and which constituted the beginning point of the fraud claim and the injury to Bailey.

We disagree. In all likelihood, initially having the airplane in Minnesota rather than Mississippi may have aided in the overall success of any fraud committed by Cox, but it was not a necessary predicate nor an element of any alleged tort. For example, if at the time Cox made his misrepresentations in February Bailey still

_____

apparent attempt at judgment as a matter of law based on lack of personal jurisdiction.

had the airplane in Mississippi, the fraud could still have occurred as Bailey could then have transported the airplane to Minnesota after acquiescing to Cox's misrepresentations. The earlier retrieval of the 421 was not required to initiate any fraud in February. More importantly, this example illustrates why the December pick-up was not the injury element of any tort. Injury commonly denotes the invasion of any legally protected interest of another. *See* **Allred**, 117 F.3d at 282. If Bailey still had the airplane in Mississippi in February, when Cox committed his fraud, then Bailey's apparent injury would have been his being induced to send the 421 over to Cox to sell the plane and to trade down to the Turbo Barron. But when Bailey allowed Zehr to transport the plane in December, Bailey had not been induced as a part of any fraud to do anything. There was no evidence at that time that a fraud had been committed or that any legally protected interest had been invaded. Indeed, Bailey's counsel surmised that Zehr and Cox devised the fraud after Zehr had taken control over the 421 in December. Thus, the retrieval of the 421 in December was not the injury element of any fraud committed in February. Instead, the injury of any fraud committed in February was the result of that fraud, i.e., Bailey's being induced to leave the plane in Minnesota to sell to Cox and to trade down to the Turbo Barron. Accordingly, the district court's basis for denying the appellants' motions to dismiss was in error, and the present case should have been

10

dismissed for lack of personal jurisdiction.[7]

## III. CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and dismiss the case for lack of personal jurisdiction. Each party is to bear their respective costs on appeal.

---

[7]In light of our ruling, we need not address the appellants' other points of error.