# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00139-COA

DALE WHITE ROBEY AND DONNA WHITE              APPELLANTS
MERKEL

v.

SUSAN GATLIN KELLY, GREGORY FOWLER           APPELLEES
GATLIN, ANNE GATLIN BURKEL, ESTATE OF
WESLEY G. GATLIN, JR. AND JESSE R.
CASTILLO

| | |
|---|---|
| DATE OF JUDGMENT: | 01/17/2020 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | CHARLES M. MERKEL JR. |
| ATTORNEYS FOR APPELLEES: | J. COLLINS WOHNER JR. |
| | WILLIAM O. LUCKETT JR. |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 08/17/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A Mississippi resident and her sister filed several claims against out-of-state defendants over oil royalty payments from land in Texas. The circuit court dismissed the lawsuit for lack of personal jurisdiction. The sisters appealed, arguing that the nonresident defendants are subject to personal jurisdiction under Mississippi's long-arm statute.

## FACTS AND PROCEDURAL HISTORY

¶2. This case stems from a dispute between two families—the Gatlins and the

Whites—over mineral rights to land in Texas. It begins in the early twentieth century with a Texas landowner named G. Denton, the ancestor of the Gatlin parties. Denton divided his large tract of land into parcels and sold them to one R.P. Ingrum for the purpose of developing a subdivision. Ingrum sold some of the parcels and then reconveyed the un-purchased parcels back to Denton.

¶3. A gap in title exists following the transfer of certain parcels back to Denton. The record next shows that Tract 1629, which is the subject of this lawsuit, was conveyed from F.M. Hayes to H. Richard Smith, then from Smith to J.M. White, the grandfather of the appellants Dale White Robey and Donna White Merkel. James M. White Jr., the father of the White sisters, inherited the land and sold its surface rights to W.H. George but retained a 75% mineral interest. George then sold the surface of the land to Joe R. Brown but retained his 25% mineral interest.

¶4. Robey and Merkel inherited the 75% mineral interest from their parents. In 2010, the sisters executed a lease agreement with oil-and-gas company Anadarko. The sisters conveyed exploration and production rights to Anadarko in exchange for monthly royalty payments. Just a few years later, oil was discovered.

¶5. Not long after, the Gatlins filed suit against Robey and Merkel in a Texas court seeking to quiet title to the land. When Anadarko became aware of this ownership challenge, the company—per its lease agreement with Robey and Merkel—began placing the royalty payments in escrow at the First National Bank of Clarksdale until the dispute's resolution. The Texas lawsuit went on for several years and culminated with the Gatlins filing a request

2

for non-suit under Rule 162 of the Texas Rules of Civil Procedure. The Texas court entered an order of voluntary non-suit, effectively dismissing the case without prejudice.

¶6. About a month later, Robey and Merkel filed suit against the Gatlins and their attorney in Merkel's home county of Coahoma in Mississippi.[1] The circuit court lawsuit alleged four torts: conversion, malicious prosecution, abuse of process, and tortious interference with contract. Robey and Merkel claimed that the Gatlins asserted a "frivolous" and "unmeritorious" claim to the property "for the calculated purpose of depriving" Robey and Merkel of their oil royalty payments. However, the sisters did not name Anadarko as a defendant.[2]

¶7. With virtually no connection to the forum state, the defendants filed a motion to dismiss for lack of personal jurisdiction. Each defendant submitted an affidavit listing his or her contacts—or lack thereof—with Mississippi. None of the defendants reside or have ever resided in Mississippi. Rather, the defendants are domiciled in different states across the country, including Virginia, Florida, Kentucky, and Texas. The defendants' only connection to this state was their attorney's service of process on Merkel, a Mississippi resident, via certified mail for purposes of the suit to quiet title in Texas.

¶8. The circuit court subsequently granted the motion to dismiss, explaining that Merkel did not suffer an "injury" in Mississippi sufficient to confer personal jurisdiction on the

---

[1] Dale White Robey resides in Virginia.

[2] In a partial summary judgment order, the Coahoma County Circuit Court adjudicated that the Gatlins no longer claimed any interest in the royalty payments, including those in escrow at the First National Bank of Clarksdale. At oral argument, counsel for Robey and Merkel indicated Anadarko had since released the funds as a result of this order.

3

nonresident defendants. Robey and Merkel appealed, arguing that the defendants are subject to personal jurisdiction under Mississippi's long-arm statute.

## DISCUSSION

¶9. We review jurisdictional issues de novo. *Adara Networks Inc. v. Langston*, 301 So. 3d 618, 622 (¶12) (Miss. 2020). "When considering a motion under Rule 12(b)(2), we take all allegations made in the complaint and their reasonable inferences as true, just as a trial court would." *Id*.

¶10. "Personal jurisdiction over a nonresident defendant is determined under a two-part inquiry." *Fitch v. Wine Express Inc*. 297 So. 3d 224, 228 (¶14) (Miss. 2020). First is "whether Mississippi's long-arm statute confers personal jurisdiction over the nonresident defendant," and "[i]f so, the second inquiry is whether personal jurisdiction comports with constitutional due process." *Id*.

¶11. Robey and Merkel argue that the Gatlins and their attorney are subject to personal jurisdiction under Mississippi's long-arm statute because Merkel suffered an injury in Mississippi. They further contend that the circuit court's exercise of jurisdiction would comport with due process.

¶12. In examining the tort prong of the long-arm statute, our Supreme Court has found there is "no requirement that the part of the tort which causes the injury be committed in Mississippi." *Sorrells v. R & R Custom Coach Works Inc.*, 636 So. 2d 668, 672 (Miss. 1994). "Since injury is necessary to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state." *Id*.

4

¶13.   The Fifth Circuit Court of Appeals has elaborated on the requirements to meet the tort prong of the long-arm statute. *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997). Very similar to the present case, *Allred* involved claims of malicious prosecution and abuse of process against out-of-state defendants whose only connection to Mississippi was service of process on Allred, a Mississippi resident, in a prior lawsuit. *Id*. at 280. Allred argued that the defendants were subject to personal jurisdiction under Mississippi's long-arm statute because their actions caused Allred to suffer economic, reputational, and emotional "injuries" in this state. *Id*. at 283.

¶14.   In its analysis, the Fifth Circuit discussed the distinction between "actual injury" and "its resultant consequences" for purposes of personal jurisdiction in tort cases. The Court explained that "[c]onsequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Id*. at 281 (internal quotation marks omitted). "Mississippi does not permit *damages* to serve as a proxy for *injury* in the personal jurisdiction calculus." *Id*. at 283 (emphasis in original). "The concepts are distinct and we must endeavor not to conflate the existence of an injury—and hence the completed tort—with the presence of its economic consequences." *Id*.

¶15.   With this distinction in mind, the federal court rejected Allred's claim of jurisdiction since "damages, alone, are insufficient to support personal jurisdiction." *Id*. The Court determined that Allred's alleged "injuries" were actually "resultant consequences." *Id*. Subsequently, the Mississippi Supreme Court adopted *Allred*'s interpretation of the long-arm statute, reiterating the need to distinguish between the actual tort injury and the consequences

of that injury. *Dunn v. Yager*, 58 So. 3d 1171, 1185 (¶27) (Miss. 2011).

¶16.    This case is on point with *Allred*. Like in that case, the plaintiffs here allege injury in Mississippi as a result of an out-of-state lawsuit filed by the defendants. Also identical to *Allred*, the defendants' only connection to Mississippi is their mailing of a summons to Merkel for purposes of their suit to quiet title in Texas. This suit must fail then for the same reasons articulated by the Fifth Circuit, which ultimately rejected the plaintiff's "contention that he can bootstrap his alleged damages incurred in Mississippi into an injury to achieve personal jurisdiction over . . . claim[s] for the purposes of the Mississippi long-arm statute." *Allred*, 117 F.3d at 284.

¶17.    Merkel argues she suffered economic injury by not being able to access the royalty funds.[3] But under *Allred*, the effect of the Gatlins' actions on Merkel in Mississippi do not amount to an actual tort "injury" that would subject the defendants to personal jurisdiction in this state. Nor do the other cases cited by Merkel require us to conclude otherwise, as they either involved direct injury to property in Mississippi or out-of-state defendants with a direct financial stake in land within our borders. *See Horne v. Mobile Area Water & Sewer Sys.*, 897 So. 2d 972, 974, 981 (¶¶4, 30) (Miss. 2004) (finding personal jurisdiction over Alabama city officials who opened a spillway causing water damage to land in Mississippi); *Wilkinson*

---

[3] Robey and Merkel claim the Gatlins intentionally targeted Merkel in Mississippi by forcing the royalty payments to be held in escrow at a Clarksdale bank. However, Anadarko established the account at the First National Bank of Clarksdale as a requirement of its lease agreement with the sisters, which provided that in case of disputed royalties, the payments would be placed in that bank or in a bank of Merkel's choosing. At oral argument, counsel for Merkel stated that the Gatlins had "constructive notice" of Merkel's contract with Anadarko and the effect their Texas lawsuit would have on Merkel's access to royalty payments. However, there is no evidence of such a motive in the record.

6

*v. Mercantile Nat'l Bank at Dallas*, 529 So. 2d 616, 617 (Miss. 1988) (holding that a Texas bank with a security interest in oil wells located in Mississippi was subject to personal jurisdiction under the long-arm statute).

¶18.   Because we find that the long-arm statute does not encompass the claims made by Robey and Merkel, we decline to review the minimum contacts of the defendants.

## CONCLUSION

¶19.   In light of *Allred* and its applicability to the claims made by the plaintiffs in this case, the Gatlins and their attorney are not subject to personal jurisdiction of the courts of Mississippi. Whether characterized as "injury" or "consequence," the harm allegedly suffered is not enough to meet the requirements of the long-arm statute. We therefore affirm the Coahoma County Circuit Court's dismissal for lack of jurisdiction.

¶20.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**