**SINGING RIVER HOSPITAL SYSTEM, Plaintiff**

v.

**James SWENSON, M.D., Defendant/Third Party Plaintiff.**

v.

**MISSISSIPPI COAST GASTROENTEROLOGY, P.C., Third Party Defendant/Second Third Party Plaintiff**

v.

**LAUGHLIN MEMORIAL HOSPITAL, INC., Second Third Party Defendant.**

**No. 1:96CV505BrR.**

United States District Court, S.D. Mississippi, Southern Division.

Jan. 14, 1998.

**MEMORANDUM OPINION**

BRAMLETTE, District Judge.

This matter is before the Court on Second Third Party Defendant, Laughlin Memorial Hospital, Inc.'s ("Laughlin"), Motion to Dismiss for Lack of Personal Jurisdiction (docket entry # 26). After reviewing the motions, briefs, applicable caselaw, and being otherwise fully advised in the premises, the Court finds as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

On December 6, 1994, Dr. James Swenson, M.D. ("Swenson") entered into a contractual arrangement with Mississippi Coast Gastroenterology, P.C. ("MCG") wherein Swenson agreed to terms of employment with MCG. This employment contract was to be in effect for a period of eighteen months, beginning December 6, 1994. Thereafter, Swenson began providing physician services as an employee of MCG and was compensated for these services. MCG benefitted from this employment arrangement as all income received by Swenson in his medical practice became the property of MCG. In return, Swenson was a salaried employee of MCG.

On February 1, 1995, an agreement was entered into between Ocean Springs Hospital (a division of Singing River Hospital System), Swenson, and MCG wherein Swenson was to maintain an active medical practice in Jackson County, Mississippi and be on staff at the hospital. In return, Swenson would be compensated by the hospital. Pursuant to the agreement between Swenson and MCG, this compensation would become the property of MCG.

Subsequently, Swenson contacted Dr. Jack Wilson ("Wilson"), the Administrator of Laughlin Memorial Hospital. Swenson told Wilson that he was interested in establishing a private practice as a gastroenterologist in Greenville, Tennessee and being accredited to the medical staff at Laughlin. As a result of this contact, Swenson entered into an Inducement Agreement with Laughlin on or about November 29, 1995. This Inducement Agreement is similar to the Physician Recruitment Agreement Swenson entered into with Ocean Springs Hospital and MCG. The Inducement Agreement with Laughlin required Swenson to move to Greenville, Tennessee, open an office there, and become an active member of the medical staff of Laughlin Memorial Hospital. The Inducement Agreement also provided that Laughlin would pay any debts owed Singing River Hospital System by Swenson, with payment to be made upon receipt of the invoice. Swenson left Mississippi and is now practicing medicine in Greenville, Tennessee.

Singing River Hospital filed the initial complaint in the present action seeking repayment of funds advanced to Swenson under the terms of their agreement and for breach of contract. Swenson filed an answer along with a third party complaint against MCG, seeking indemnity from all liability to Singing River Hospital System. MCG filed

its answer along with a third party complaint against Laughlin, arguing that Laughlin interfered with an existing contractual relationship between MCG and Swenson.[1] The complaint also alleged that Laughlin interfered with a prospective business advantage and that in the event that Swenson should prevail against MCG, MCG is entitled to contractual indemnification from Laughlin.

Laughlin subsequently filed this motion, arguing that the action against them should be dismissed based on a lack of personal jurisdiction. Laughlin argues that the plaintiff has failed to prove that jurisdiction exists pursuant to either Mississippi's long arm statute or the United States Constitution.

## II. DISCUSSION

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's jurisdiction over the nonresident. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.1997). In a federal diversity suit, the reach of personal jurisdiction over nonresident defendants is measured by a two-step inquiry. *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir.1996). First, the law of the forum state must provide for the assertion of such jurisdiction. *Jobe*, 87 F.3d at 753. Second, the exercise of jurisdiction under the state law must comport with the dictates of the Fourteenth Amendment Due Process Clause. *Id.*

### A. FORUM LAW—MISSISSIPPI'S LONG ARM STATUTE

In construing the law of the forum state, the Court looks first to Mississippi's long arm statute which provides in pertinent part:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss.Code Ann. § 13–3–57 (Supp.1996). In the present case, the plaintiff contends that the Court has personal jurisdiction over Laughlin pursuant to both the tort and the contract prongs of section 13–3–57. However, as discussed *infra*, only the tort prong needs to be addressed.

Section 13–3–57 provides that a nonresident defendant will be subjected to the jurisdiction of the Court if it "commit[s] a tort in whole or in part in this state against a resident or nonresident of this state." In construing the tort prong of Mississippi's long arm statute, the Mississippi Supreme Court has held that personal jurisdiction over a nonresident defendant who allegedly committed a tort is proper if any of the elements of the tort—or any part of an element—takes place in Mississippi. *Smith v. Temco*, 252 So.2d 212, 216 (Miss.1971). Since injury is necessarily required to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state. *Rippy v. Crescent Feed Commodities, Inc.*, 710 F.Supp. 1074, 1077 (S.D.Miss.1988) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168 (5th Cir.1985)).

In the present case, the plaintiff alleges that the actions of Laughlin caused it injury resulting from the loss of income derived by Swenson. These alleged injuries clearly would have been suffered in Jackson County, Mississippi. Therefore, the tort prong of section 13–3–57 has been satisfied, and the long arm statute need not be further considered.

---

1. There are four parties involved in the present litigation. However, this motion arises as a result of the third party complaint filed by MCG against Laughlin. Therefore, for purposes of clarity, this opinion will refer to MCG simply as "plaintiff" and Laughlin as "defendant."

## B. THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE

Once analysis of the forum state's law has been completed, the Court considers whether the exercise of jurisdiction over the defendant comports with due process. The general constitutional test for personal jurisdiction is well-established. A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The defendant's contacts with the forum state must also be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316. A defendant's contacts are sufficient if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ In its consideration of this standard, the Court's analysis depends upon whether the plaintiff seeks the exercise of personal jurisdiction in a suit unrelated to the defendant's contacts with the forum state or in a suit arising out of or related to the defendant's contacts with the forum. "General jurisdiction" is personal jurisdiction based on a defendant's contacts with the forum that are unrelated to the controversy. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To exercise general jurisdiction the Court must determine whether "the contacts are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction." *Stuart v. Spademan,* 772 F.2d 1185, 1191 (5th Cir.1985) (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Laughlin is a hospital located in Greenville, Tennessee. Other than the contacts alleged in the present case, there is no evidence that the hospital has ever had any contacts with the forum state. Clearly, Laughlin's contacts with the forum state cannot be described as "systematic and continuous." Therefore, the Court is unable to exercise general jurisdiction in this action.

■ "Specific jurisdiction," however, is personal jurisdiction based on contacts with the forum state that are related to the particular controversy. *Helicopteros,* 466 U.S. at 414. Even a single purposeful contact may in a proper case be sufficient to meet the requirement of minimum contacts when the cause of action arises from the contact. *Micromedia v. Automated Broadcast Controls,* 799 F.2d 230, 234 (5th Cir.1986). To exercise specific jurisdiction, the Court must examine the relationship among the defendants, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). With these well-established principles in mind, the Court looks to the present case.

The plaintiff has filed suit alleging that the defendant committed two intentional torts: intentional interference with a contractual relationship and interference with a prospective business advantage. The plaintiff's jurisdictional argument is based on the fact that the "injury result[ed] in Mississippi." (Pl.'s Resp. Brf. at ·6). The United States Supreme Court addressed a similar argument in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* a California resident brought suit in California against a Florida-based corporation for libel, invasion of privacy, and intentional infliction of emotional harm. *Calder,* 465 U.S. at 785. The Supreme Court found jurisdiction existed and held that most of the harm or "effects" to the plaintiff's reputation and career occurred in California and that the defendant's intentional tortious actions were aimed at California. *Id.* at 789–90. Following *Calder,* many courts have found personal jurisdiction in cases where intentional torts have been alleged and the defendant has almost no "contacts" with the forum state.

For instance, in *Burt v. Board of Regents,* 757 F.2d 242, 244–45 (10th Cir.1985), the Court applied *Calder* to a libel claim. The Court found minimum contacts with Colorado when a Nebraska physician who had supervised the plaintiff in a Nebraska residency

program mailed an allegedly defamatory letter to Colorado, where the plaintiff intended to establish a medical practice. *Burt,* 757 F.2d at 245. The Court explained that "no due process notions of fairness are violated by requiring one who intentionally libels another to answer for the truth of his statements in any state where the libel causes harm to the victim." *Id.*

Courts have also applied *Calder* to business torts. *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077–80 (10th Cir.1995). However, those courts finding personal jurisdiction based upon intentional tort analysis have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction. *Far West Capital,* 46 F.3d at 1078–80.

For instance, the Seventh Circuit has held that the mere allegation of an intentional tort does not create jurisdiction in the plaintiff's home forum under *Calder. Wallace v. Herron,* 778 F.2d 391, 394–95 (7th Cir.1985). In *Wallace,* the Court held that an intentional tort suggests purposeful availment, but is only one factor in creating minimum contacts. *Id.* Addressing the same issue, the Fourth Circuit wrote:

> Such a theory would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff always feels the impact of the harm there. Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.

*ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617 (4th Cir.1997).

In *Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc.,* 982 F.Supp. 350 (D.Md. 1997), the Court found that the Maryland District Court could not exercise personal jurisdiction over the nonresident defendant, writing that "there is nothing other than an (alleged) interference with contract, where one of the contracting parties happens to be a Maryland resident."

After reviewing several post-*Calder* decisions, the Tenth Circuit wrote:

> Our review of these post-*Calder* decisions indicates that the mere allegation

that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws. The Supreme Court's observations in *Burger King,* although specifically addressed to a breach of contract claim, provide a useful framework. *See Burger King,* 471 U.S. at 478–79. We therefore examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. In addition, we examine the contacts created by the out-of-state defendant in committing the alleged tort.

*Far West Capital,* 46 F.3d at 1079–80.

In *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763 (5th Cir.1988), the Fifth Circuit found that personal jurisdiction did not exist because there was no evidence that the non-resident defendant "expressly aimed its allegedly tortious activities at [the forum state], nor [was] there evidence that [the nonresident defendant] knew the brunt of [the plaintiff's] injury would be felt there." *Southmark,* 851 F.2d at 772. In another case discussing *Calder,* the Fifth Circuit explained that "the effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson,* 117 F.3d 278, 286 (1997).

Based on the foregoing, the Court looks to the defendant, Laughlin's contacts with the forum other than the "effects" its actions have allegedly had here. The evidence presented shows that the defendant, Laughlin, is a Tennessee Corporation. Laughlin is not registered to do business in Mississippi, is not doing business in Mississippi, and has never done business within the State of Mississippi. The evidence also shows that Laughlin never once came into this forum to entice Swenson away from Jackson County,

Mississippi. Swenson made first contact by going to Laughlin. The plaintiff has put forth no evidence of any mail from Laughlin into the forum state. There has been no evidence with regard to phone calls coming into the forum discussing Swenson's future in Tennessee. In the end, the plaintiff is left with trying to convince the Court to assert personal jurisdiction over a nonresident defendant with virtually no contacts with the forum state. Plaintiff offers two "contacts" only. First, that the effects of the defendant's actions will be felt in Mississippi. Second, that the defendant agreed to pay a debt owed by Swenson to a hospital located in Mississippi.

It is clear that the effects of the defendant's alleged actions were felt in this forum. However, as discussed *supra*, effects alone are not enough in the Fifth Circuit.

The plaintiff has discussed only one other "contact" that Laughlin has had with the forum. That contact is a provision in the Inducement Agreement which provides that Laughlin would "[p]ay the debt owed Singing Rivers Hospital System by James A. Swenson, M.D." This, according to the plaintiff is enough to establish personal jurisdiction. The plaintiff cites two cases to support this argument. First, the plaintiff cites *Shackelford v. Central Bank of Mississippi*, 354 So.2d 253 (Miss.1978) for the proposition that "[t]he Mississippi Supreme Court has considered the payment of obligations in Mississippi under the terms of a contract to be sufficient to support jurisdiction in this state." (Pl.'s Resp. Brf. at 6). However, in that case the Court also noted that:

> Appellant [defendant] made at least one trip to the office of appellee [defendant] and from 1973 until the date suit was filed, he (1) was engaged in the business of acquiring real estate in and around Jackson, Mississippi, (2) was a partner in the Regency Apartment Developers, Ltd., which did considerable work for Pilgrim Properties, Inc., and (3) executed notes and deeds of trust to various individuals and firms in connection with his business enterprises, which finance arrangements involved in excess of five million dollars ($5,000,000).

*Shackelford*, 354 So.2d at 254. Moreover, the note at issue in *Shackelford* provided that it was negotiable and payable at Central Bank of Mississippi in Brandon, Mississippi. *Id.* In other words, there were many more contacts with the forum in *Shackelford* than merely the "payment of obligations."

Next, the plaintiff cites *Sheridan, Inc. v. CK Marshall and Company, Inc.*, 360 So.2d 1223 (Miss.1978), pointing out that "[t]he Court found the non-resident defendant to have partially performed its part of the contract in Mississippi when it made ... one rental payment." (Pl.'s Resp. Brf. at 7). However, in *Sheridan* the contract at issue provided that in the event of suit, "any court of competent jurisdiction situated in the City of Hattiesburg, Forrest County, Mississippi, shall have venue of such action, and that the interpretation and legal effect of this lease shall be governed by the laws of the State of Mississippi ...."

In other words, in both *Shackelford* and *Sheridan*, the nonresident defendants had "purposefully directed" their activities at residents of the forum. *See Burger King*, 471 U.S. at 472. In both cases, the defendants had signed agreements directing them to act in Mississippi under certain conditions. Clearly, the defendants' actions in *Shackelford* and *Sheridan* were such that the nonresident defendants could have reasonably anticipated being haled into court in Mississippi based on their dealings with the forum. *See World–Wide Volkswagen*, 444 U.S. at 297. The actions of Laughlin were not remotely similar to those of the defendants in either *Shackelford* or *Sheridan*. The Court finds that Laughlin's actions never once "demonstrate[d] purposeful availment of the benefits of the forum state." *Allred*, 117 F.3d at 286; The Court further finds that Laughlin's actions were never "expressly aimed" at Mississippi. *Calder*, 465 U.S. at 789.

### III. CONCLUSION

To establish personal jurisdiction over a nonresident defendant, a party must first meet at least one prong provided in Mississippi's long arm statute. In the present case, the tort prong has been satisfied since the

alleged injury to the plaintiffs occurred in Mississippi. However, once this analysis is complete, the Court must determine whether the exercise of jurisdiction over the defendant comports with due process. Clearly, the effects of the defendant's alleged actions were felt in the forum state. However, in the Fifth Circuit, these effects alone are not enough to satisfy due process. The effects test of *Calder* is not a substitute for a non-resident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state. Clearly, the Supreme Court did not intend for *Calder* to be interpreted such that any plaintiff could force any non-resident defendant into the plaintiff's home forum simply by alleging an intentional tort. Such an analysis would significantly undermine the due process protection afforded by the Fourteenth Amendment.

Other than the effects of its actions, the only "contact" the defendant has ever had with Mississippi is a provision in the Inducement Agreement to repay Singing River Hospital the debts owed by Swenson. Not only does the Court believe that such a tenuous contact is not enough to warrant jurisdiction, this alleged contact was not even directed at the plaintiff. MCG, not Singing River, has filed suit against Laughlin. With regard to MCG itself, the effect of Laughlin's actions is the *only* contact alleged. Nevertheless, even considering the Inducement Agreement provision, these contacts with Mississippi fall far short of the minimum contacts mark, and thus, the exercise of personal jurisdiction by this Court would be improper under the Due Process Clause of the Fourteenth Amendment.

Accordingly, for the reasons set forth above, this Court finds that the defendant Laughlin Memorial Hospital, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (docket entry # 26) should be granted. A separate order in conformity with and incorporating by reference the foregoing opinion shall issue. Each party shall bear their respective costs.