Gauvin v. Balarsky, et al.          CV-97-352-M    06/26/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Dorothy Gauvin, Executrix of the
Will of Robert L. Sullivan,
      Plaintiff

      v.                                    Civil No. 97-352-M

Colleen Sullivan Balarsky,
General Electric Savings and
Security Trust,
      Defendants


                        O R D E R


      Plaintiff Dorothy Gauvin, the executrix of the estate of

Robert L. Sullivan and the decedent's aunt, claims that

Sullivan's former wife, Colleen Sullivan Balarsky, improperly

obtained some $300,000.00 in estate assets held in Sullivan's

employee benefit plan, the General Electric Savings and Security

Trust ("the trust").  Gauvin asserts state law claims against

Balarsky for unjust enrichment, conversion, tortious interference

with contractual relations, and fraud.  She asserts claims

against the trust for breach of contract and violation of the

Employee Retirement Income Security Act of 1974, as amended, 29

U.S.C.A. § 1001 et seq. (ERISA).  The trust filed cross-claims

against Balarsky asserting violation of ERISA and a federal

common law claim for restitution based on unjust enrichment.

Balarsky moves to dismiss Gauvin's and the trust's claims against

her for lack of personal jurisdiction.


                        **BACKGROUND**

During their marriage, Sullivan, Balarsky, and their daughter lived in California, where Sullivan was employed by General Electric Company. Sullivan participated in the GE Savings and Security Program, an employee benefit plan governed by ERISA. The Sullivans separated in 1988 and thereafter began divorce proceedings.

On January 24, 1992, five months before his divorce from Balarsky was finalized, Sullivan executed a will that excluded Balarsky from inheriting any part of his estate. In June of 1992 the marriage was formally dissolved by order of a California court, and the marital assets were distributed according to the terms of a divorce settlement agreement. Under the terms of the settlement agreement, Sullivan was awarded legal title to all assets in his GE plan, and Balarsky expressly waived any legal title to those assets. Nevertheless, the agreement also awarded Balarsky the right to receive a portion, equal to her community property interest, of Sullivan's plan assets. Although Sullivan named Balarsky as his beneficiary under the plan in 1984, in 1992 he made his estate the beneficiary of all his plan assets.

Sullivan died on August 6, 1996. Gauvin, a New Hampshire citizen, was appointed executrix of his estate by the Strafford County (New Hampshire) Probate Court. Gauvin contacted GE sometime before August 14, 1996, to inform it of Sullivan's death.[1] On September 27, 1996, Gauvin, through counsel, wrote to

_____

[1] All contacts with GE mentioned herein were with the Survivor Support Services office in Schenectady, New York.

GE to request that the retirement benefits due Sullivan be paid to his estate, except for that portion payable by Sullivan to Balarsky under the terms of the divorce settlement agreement. However, Balarsky had already written to GE, erroneously informing the plan that Sullivan left no will, that his daughter was his sole heir, and that Balarsky was entitled to a portion of Sullivan's GE "Pension, Profit Sharing and Savings Plans" under the divorce settlement agreement. In addition, Balarsky represented that she was acting as her daughter's guardian, who was entitled to the remaining plan benefits, in requesting payment. Balarsky enclosed part of the marital settlement agreement, which explained her community property interest in Sullivan's plan assets, but did not send the page that made it clear Sullivan had been awarded complete legal title to his plan assets.

On September 11, 1996, Gauvin's counsel wrote to Balarsky, who was residing in Texas, to inform her of Sullivan's will and Gauvin's status as executrix.[2] The letter also asked that Balarsky refrain from interfering with any assets of the estate without first obtaining permission from the Strafford County Probate Court. Despite that notice, Balarsky never informed GE that she had erroneously represented that Sullivan left no will. Instead, she continued to demand payment of the ERISA plan funds held on Sullivan's behalf by the trust.

---

[2] Balarsky was a resident of Texas during the fall of 1996, but she is now a resident of California.

3

Gauvin's counsel again wrote to GE, on October 23, 1996, and on November 20, 1996, to inquire about Sullivan's benefits. In December, GE responded that the value of Sullivan's interest in the ERISA plan was $307,290.71, and that amount would be paid to the beneficiary of record. Later that month, the trust paid Balarsky the entire balance of Sullivan's interest in the ERISA plan (according to GE, the sum was $348,454.06), notwithstanding the fact that Sullivan had named his estate as beneficiary.

After paying Balarsky, the trust discovered its apparent error and demanded that Balarsky return the funds. Meanwhile, Gauvin demanded that the trust pay the estate the full amount of Sullivan's plan benefits. The trust refused, pending repayment by Balarsky.

## DISCUSSION

When a defendant moves to dismiss for lack of personal jurisdiction, plaintiff bears the burden of proving jurisdiction. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). A plaintiff may employ a "prima facie" method of proof where, as here, issues of credibility are not seriously in dispute. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145-46 (1st Cir. 1995); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675-76 (1st Cir. 1992).

To make a prima facie showing, plaintiff must go beyond the pleadings and "adduce evidence of specific facts." Foster-Miller, 46 F.3d at 145. The court draws "the facts from the

4

pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). In this case, subject matter jurisdiction over Gauvin's (state law) claims against Balarsky is premised on diversity of citizenship (28 U.S.C.A. § 1132) while jurisdiction over the trust's cross-claims is based on federal question jurisdiction (28 U.S.C.A. § 1331) and ERISA (29 U.S.C.A. § 1132(e) and (f)).

## I.    PERSONAL JURISDICTION — GAUVIN'S STATE LAW CLAIMS

### A.    The New Hampshire Long-Arm Statute

In a diversity case, the district court's power to assert personal jurisdiction over a nonresident defendant is limited by the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. Sawtelle, 70 F.3d at 1387. New Hampshire's long-arm statute permits the exercise of personal jurisdiction over a nonresident defendant who "in person or through an agent . . . commits a tortious act within the state . . . ." N.H. Rev. Stat. Ann. § 510:4, I (1983).

The New Hampshire Supreme Court has interpreted the statute to authorize assertion of personal jurisdiction over nonresident tortfeasors to the full extent allowed by the Due Process Clause. Phelps v. Kingston, 130 N.H. 166, 171, 536 A.2d 740, 742 (1987). "[W]hen a state's long-arm statute is coextensive with the outer

5

limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards." Sawtelle, 70 F.3d at 1388. Thus, the constitutional inquiry alone determines whether this court may properly assert personal jurisdiction over defendant in this case.

## B.    The Due Process Clause

In order for the assertion of personal jurisdiction to comply with the tenets of due process, certain "minimum contacts" must exist between the defendant and the forum state. Sawtelle, 70 F.3d at 1388 (quoting International Shoe Co. v. State of Washington, 326 U.S. 310 (1945)). This Circuit employs a three-part test to determine whether sufficient contacts exist to support the exercise of specific[3] personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

---

[3] Plaintiff's jurisdictional showing varies depending upon whether the plaintiff asserts jurisdiction under a theory of "general" or "specific" jurisdiction. See Ticketmaster, 26 F.3d at 204 n.3 (citing Donatelli v. National Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990)). Here, as in Ticketmaster, "plaintiff's case stands or falls on a theory of specific jurisdiction." Id.

<u>United Electrical Workers v. 163 Pleasant Street Corp</u>, 960 F.2d 1080, 1089 (1st Cir. 1992). Application of this tripartite test is fact sensitive — so much so that the task of "[d]ivining personal jurisdiction is `more an art than a science.'" <u>Sawtelle</u>, 70 F.3d at 1388 (quoting <u>Ticketmaster</u>, 26 F.3d at 206).[4]

### 1.   Relatedness

Under the tripartite formula, the court must first consider whether plaintiff's claims arise out of, or relate to, defendant's in-forum activities. See <u>Ticketmaster-New York</u>, 26 F.3d at 206. The requirement "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." <u>Id.</u> Plaintiff's cause of action "must directly arise out of the specific contacts between the defendant and the forum state." <u>Sawtelle</u>, 70 F.3d at 1389.

Balarsky's contact with New Hampshire was indirect and minimal. She lived in Texas during the fall of 1996 when she contacted GE's Survivor Support and Services office in Schenectady, New York, to inquire about Sullivan's plan assets, and sent excerpts from their divorce settlement agreement to New York to show (allegedly fraudulently) that she was entitled to

---

[4] At each of the three steps, the court must analyze the contacts attributable to <u>each</u> individual defendant. <u>Sawtelle</u>, 70 F.3d at 1389. <u>See</u> <u>also</u> <u>Rush v. Savchuk</u>, 444 U.S. 320, 332 (1980) ("The requirements of <u>International Shoe</u> . . . must be met as to each defendant over whom a . . . court exercises jurisdiction.").

Sullivan's assets.[5]  Gauvin's counsel sent a letter from New Hampshire to Balarsky in Texas informing her that Sullivan's will was being probated in New Hampshire.  Balarsky's counsel sent a letter from California to Gauvin's counsel in New Hampshire about Balarsky's interest in the probate of the will.  In November, Balarsky completed a Distribution Election Form for Sullivan's plan assets which she sent from Texas to GE in New York.  The trust sent Sullivan's plan assets to Balarsky in Texas.

None of Balarsky's allegedly tortious conduct occurred in New Hampshire.[6]  Balarsky had minimal contact with New Hampshire and Sullivan's estate related to her competing claim to Sullivan's GE plan assets, and that consisted of only incidental correspondence.

Gauvin's causes of action and her suit against Balarsky, arise from Balarsky's contacts with GE in New York and her successful efforts to obtain Sullivan's plan assets.  If the trust had denied Balarsky's claim to the plan assets and had

_____

[5]  The trust lists its business address as being in Connecticut, although all communication seems to have been with GE's Survivor Support and Services office in Schenectady, New York.

[6]  Gauvin alleges that Balarsky tortiously converted the plan assets, interfered with the estate's contractual relations with the trust, was unjustly enriched, and fraudulently induced the trust to pay her Sullivan's plan assets.  None of the activity alleged to comprise each tort occurred in New Hampshire. See, e.g., E.J. Caron Enterprises, Inc. v. State Operating Co., 87 N.H. 371 (1935) (conversion); Barrows v. Boles, 141 N.H. 382, 392 (1996) (tortious interference with contractual relations);Pella Windows and Doors, Inc. v. Faraci, 133 N.H. 585, 586 (1990) (unjust enrichment); Snow v. American Morgan Horse Ass'n, Inc., 141 N.H. 467, 468 (1996) (fraud).

8

instead paid the funds to Sullivan's estate, Gauvin would not have any of her present claims against Balarsky. Thus, Gauvin's causes of action really arose in New York, where Balarsky communicated with the trust and where she successfully obtained Sullivan's plan assets.

Gauvin and the trust argue that the relatedness requirement is nevertheless satisfied because Balarsky's allegedly tortious conduct outside the state forseeably caused harm in New Hampshire. See, e.g., Gray v. St. Martin's Press, Inc., 929 F. Supp. 40, 45 (D.N.H. 1996). This so-called "effects test" is more appropriately considered in the context of the second factor, purposeful availment.

### 2. Purposeful Availment

To satisfy the second part of the jurisdictional test, a plaintiff must show that the defendant's contacts with the forum represent "a purposeful availment of the privilege of conducting activities in the forum state." Sawtelle, 70 F.3d at 1389. "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's `random, isolated, or fortuitous' contacts with the forum state." Id. at 1391 (quoting Keeton, 465 U.S. at 774).

The First Circuit has identified "two cornerstones of purposeful availment": Ticketmaster, 26 F.3d at 207. The first is foreseeability: "defendant's `conduct and connection with the forum State [must be] such that he should reasonably anticipate

9

being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The second is voluntariness: "Jurisdiction may not rest on the `unilateral activity of another party or a third person.'" Id. at 207-08 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Gauvin and the trust rely on the "effects test" described in Calder v. Jones, 465 U.S. 783 (1984) to satisfy the purposeful availment requirement (as well as the "relatedness" factor) for jurisdiction. The Calder "effects test" may be cautiously applied outside the context of defamation actions as part of a more general analysis of a defendant's intentional contact with the forum. See, e.g., Allred v. Moore & Peterson, 117 F.3d 278, 286 (5th Cir. 1997), cert. denied, 118 S.Ct. 691 (1998); Gutierrez v. Givens, 1998 WL 162195 *5 (S.D. Cal., April 3, 1998); Singing River Hosp. Sys. v. Swenson, 1998 WL 113900 *5 (S.D. Miss., Jan. 14, 1998). See also Noonan v. Winston, 135 F.3d 85, 90 (1st Cir. 1998) (noting Calder effects test appropriately applied in a defamation case to determine purposeful availment).

Defendants in Calder wrote and edited an allegedly defamatory article in Florida about a professional entertainer who lived and worked in California. Finding that a California court could exercise jurisdiction over the defendants, the Court reasoned that defendants had been charged with an intentional tort, defamation, expressly aimed at California and that

10

defendants knew the brunt of the plaintiff's injury would be felt in California, where she lived and worked and where the defendants' paper had its largest circulation. Calder, 465 U.S. at 789-90.

In contrast, on the record presented here, Balarsky's actions were aimed at Sullivan's plan assets, controlled by GE in Schenectady, New York, and the trust, in Connecticut. If Balarsky believed she was legitimately entitled to Sullivan's plan assets, her actions were not intended to harm the estate in New Hampshire or anywhere else. If, as alleged, Balarsky intentionally misrepresented her entitlement to the plan assets, knowing that the estate was the proper recipient, she still aimed her tortious conduct at the trust not the estate (i.e. seeking to defraud the trust — the estate's claim would not seem to be affected by the Trust's falling for a fraud scheme perpetrated by Balarsky). Thus, justifiably or not, the trust (not Balarsky) has caused any harm the estate suffered, by refusing to pay Sullivan's plan assets to his estate. The effect of Balarsky's actions harmed the trust, if the trust is indeed obligated to pay the estate, so that any harm Balarsky has caused was aimed at and was felt primarily in New York. See Sawtelle, 70 F.3d at 1390 (communications in New Hampshire ancillary to defendant's legal malpractice that occurred outside of New Hampshire.)

Accordingly, the court finds that Gauvin has not shown that the litigation is sufficiently related to Balarsky's contact with New Hampshire, or that Balarsky purposefully availed herself of

11

the opportunity to conduct activities in New Hampshire in a manner sufficient to support personal jurisdiction over her in New Hampshire. Even if Gauvin had been able to make a weak showing at the first two steps of the tripartite test, which she has not done, the exercise of personal jurisdiction would then have to be fortified by an especially strong showing of reasonableness under the Gestalt factors. See Sawtelle, 70 F.3d at 1394. The record here does not support the conclusion that personal jurisdiction would be reasonable in New Hampshire.

### 3. The Gestalt Factors

"In constitutional terms, the jurisdictional inquiry is not a mechanical exercise. The Court has long insisted that concepts of reasonableness must inform a properly performed minimum contacts analysis." Ticketmaster, 26 F.3d at 209. This consideration involves "a panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal." Id. The Supreme Court has identified five such factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. (citing Burger King, 471 U.S. at 477). The first factor, the burden of appearing imposed on defendant Balarsky, has particular significance here. The burden of summoning a California resident

12

to defend herself in New Hampshire presents an obvious and substantial burden. See Ticketmaster-New York, 26 F.3d at 210.

Regarding the second factor, New Hampshire's adjudicatory interest in this matter is minimal at best. Here, Balarsky's efforts to obtain Sullivan's plan assets occurred entirely outside of New Hampshire, and therefore this factor weighs against the exercise of jurisdiction. See Sawtelle, 70 F.3d at 1395. This is so particularly in light of the fact that the estate's claim against the trust is not weakened by Balarsky's alleged fraud elsewhere.

Unlike the first two factors, the third factor, the plaintiff's interest in obtaining convenient relief, supports the exercise of jurisdiction here because, obviously, the most convenient location for the estate and its executrix is her place of residence, New Hampshire.

However, the fourth factor, the administration of justice, weighs against Gauvin. Gauvin argues that dismissing the claims against Balarsky will have the effect of splitting the case because the action will proceed against the trust in this forum, while Gauvin may bring a second action against Balarsky in a different forum. While that may be true, Gauvin can avoid dual actions by seeking to bring the entire action in a more suitable forum or transfer the case against the trust for joinder with any suit brought against Balarsky.

Finally, under the fifth factor, neither party has raised a policy argument significant enough to sway the court in either direction. This factor offers support to neither side.

The Gestalt factors weigh against the exercise of personal jurisdiction when considered in their totality — this record hardly presents the "especially strong" showing of reasonableness necessary to fortify a weak showing on the first two requirements. Since the minimum requirements necessary to satisfy due process have not been met, the court finds that it lacks personal jurisdiction over Balarsky with respect to Gauvin's state law claims based on diversity jurisdiction.

## II. THE TRUST'S ERISA CLAIMS

Personal jurisdiction for purposes of claims based on federal question jurisdiction is constrained by the requirements of service of process found in Federal Rule of Civil Procedure 4. See Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991). Service is limited to the territorial boundaries of the court's forum state unless a federal statute provides otherwise. Fed. R. Civ. P. 4(k)(1)(D); Lorelei Corp., 940 F.2d at 719-20. ERISA provides for nationwide service of process. 29 U.S.C.A. § 1132(e)(2); see also Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992). Under a statute providing for nationwide service, such as the ERISA provision, a court may exercise personal jurisdiction over any defendant having minimum contacts with the United States. Id.; United

14

Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1086 (1st Cir. 1992); cf. Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 825-826 (5th Cir. 1996) (same holding but expressing reservations about constitutionality of nationwide service). As Balarsky does not contest that she had sufficient minimum contacts with the United States to satisfy due process requirements for nationwide service, this court may exercise personal jurisdiction over her with respect to the trust's ERISA claims.[7]

Although the parties have not raised (or briefed) the possibility, federal question jurisdiction under ERISA permitting personal jurisdiction over Balarsky might also suggest supplemental personal jurisdiction for Gauvin's state law claims against Balarsky. See, e.g., Rice v. Nova Biomedical Corp., 38 F.3d 909, 913 (7th Cir. 1994); Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1256 (5th Cir. 1994); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir. 1993); Anderson v. Century Products, 943 F. Supp. 137, 144 (D.N.H 1996); but see Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1033 n.12 (D.C. Cir. 1997) (28 U.S.C.A. § 1367(a) pertains to subject matter not personal jurisdiction); Debreceni

_____

[7] The trust's federal common law claim for restitution alleging that Balarsky is unjustly enriched by Sullivan's plan assets (see, e.g., Celi v. Trustees of Pipefitters Local 537 Pension Plan, 975 F. Supp. 23, 28-29 (D. Mass. 1997)) presumably is premised on federal question jurisdiction. It is not clear whether service, and therefore personal jurisdiction, is nationwide, as provided by ERISA, or is limited to the boundaries of the forum state. Fed. R. Civ. P. 4(k).

15

<u>v. Bru-Jell Leasing Corp.</u>, 710 F. Supp. 15, 19-20 (D. Mass. 1989)
(pendent jurisdiction will not confer personal jurisdiction).
However, even if supplemental personal jurisdiction would be
available through the trust's cross-claims, the court also notes,
without prompting from the parties, that venue in this district
is not appropriate under ERISA.

The ERISA provision for nationwide service of process begins
by setting forth the requirements of venue.  The whole clause
reads:

> Where an action under this subchapter is brought in a
> district court of the United States, it may be brought
> in the district where the plan is administered, where
> the breach took place, or where a defendant resides or
> may be found, and process may be served in any other
> district where a defendant resides or may be found.

29 U.S.C.A § 1132(e)(2).  Venue for the trust's ERISA claims
against Balarsky would be proper where the plan is administered
(probably New York or Connecticut), where the breach took place
(also probably New York or Connecticut, or possibly Texas), or
where the defendant resides (California) or "may be found" (at
least California and Texas).  Only if Balarsky "may be found" in
New Hampshire would the claims against her find proper venue
here.

A defendant "may be found" for purposes of the statute in
any district where the plaintiff may obtain personal
jurisdiction, that is, where a defendant meets the minimum
contacts/due process requirements for personal jurisdiction.  <u>See</u>
<u>Varsic v. United States District Court</u>, 607 F.2d 245, 248-49 (9th
Cir. 1979); <u>accord</u> <u>National Pension Fund v. Wakefield Indus.</u>,

Inc., 699 F.2d 1254, 1257 (D.C. Cir. 1983); Seitz v. Board of Trustees of N.Y. Teamsters Pension Fund, 953 F. Supp. 100, 102 (S.D.N.Y. 1997); Board of Trustees v. McD Metals, Inc., 964 F. Supp. 1040, 1045 (E.D. Va. 1997); McFarland v. Yegen, 699 F. Supp. 10, 13 (D.N.H. 1988). As was discussed and decided above, Balarsky lacks sufficient minimum contacts with New Hampshire to support the exercise of personal jurisdiction over her in this district. Thus, although the court has personal jurisdiction, venue is not proper in New Hampshire for the trust's ERISA claims.

## III. RESOLUTION

This court lacks personal jurisdiction over Balarsky with respect to Gauvin's claims against her. While personal jurisdiction exists for the trust's ERISA claims, venue is not proper in New Hampshire. Gauvin's claims against the trust are unaffected by the present motion to dismiss.

Given this mixed result, the court proposes to transfer the entire case, if the parties agree, to a district where it could have been brought originally, which would most likely be an appropriate district in Texas, New York, or California. The parties may respond to the court's proposal by filing a joint stipulation for transfer of the entire case to a particular district, or by filing other appropriate responses to the proposal within thirty days of the date of this order. If the parties cannot agree to the proposed transfer, the court will

17

dismiss Gauvin's claims against Balarsky for want of personal jurisdiction over her, transfer the trust's ERISA claims to an appropriate district (as agreed by the parties or as decided by the court), and retain Gauvin's claims against the trust in this district.

Before the case, or part of the case, is transferred to another district, however, the court urges the parties to seriously discuss and consider settlement. On the present record, there seems to be little dispute that the trust wrongly paid Balarsky and that it is independently obligated to pay the estate. The trust's claim against Balarsky also seems straightforward – Balarsky does not seem to have been entitled to receive Sullivan's plan assets from the trust and probably should not benefit from the trust's apparent error. However, Balarsky may well be entitled to her community property share of Sullivan's plan assets from the estate, and her daughter is also likely to receive the same money from the estate. Rather than continue to deplete the estate's assets, Balarsky's personal funds, and funds of the trust properly belonging to all beneficiaries, by incurring additional attorneys' fees and other expenses associated with litigation, all parties could benefit from a mutually acceptable settlement that would appropriately allocate the disputed funds.

**CONCLUSION**

18

For the foregoing reasons, the court grants in part defendant's motion to dismiss for lack of personal jurisdiction (document no. 7). The parties have thirty (30) days from the date of this order to respond to the court's proposed transfer.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 26, 1998

cc:  James H. Schulte, Esq.
     Vincent A. Wenners, Jr., Esq.
     William D. Pandolph, Esq.